THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN D. FERGUSON, Defendant-Appellant.

First District (2nd Division)   No. 80-170

Opinion filed November 12, 1980.

James J. Doherty, Public Defender, of Chicago (Emily Eisner and Aaron Meyers, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

John D. Ferguson was convicted of murder following a bench trial and sentenced to a term of not less than 15 years nor more than 45 years in the penitentiary. His conviction was appealed on the grounds that he was denied a fair trial by reason of the alleged incompetency of his privately retained counsel and that he was not proven guilty beyond a reasonable doubt. The bases asserted for the former ground were that defense counsel was unprepared for trial and that he made an improper opening statement prejudicial to defendant. We affirmed that conviction in an abstract opinion ((1974), 25 Ill. App. 3d 379, 323 N.E.2d 398). Defendant has been incarcerated for that offense since 1972.

Pursuant to the Illinois post-conviction hearing statute (Ill. Rev. Stat. 1975, ch. 38, par. 122—1 et seq.), defendant filed a pro se petition for post-conviction relief in July 1976. A motion to dismiss the petition was filed by the State; however, prior to a ruling on that motion the public defender of Cook County, now representing defendant, filed his supplemental petition in December 1978. The supplemental petition, supported by five affidavits, claimed that defendant was denied effective assistance of counsel and that he was deprived of his constitutional right to plead guilty. The State filed a motion to dismiss the supplemental petition as well and a hearing was held on both motions. The trial court, after considering the contents of the affidavits filed and oral argument presented by counsel, denied the post-conviction petitions.

With regard to the ground alleging incompetency of counsel, the trial court ruled that since this issue had been raised on the previous appeal and was decided adversely to defendant, it was res judicata. No appeal is taken from that part of the order of dismissal. The present appeal relates solely to the question of whether the trial court erred in allowing the

motion to dismiss that part of the petition based upon the alleged violation of defendant's constitutional right to decide whether or not to plead guilty. The asserted deprivation occurred when defendant's privately retained counsel failed to communicate to him an offer by the State to plead guilty to a lesser included offense and to accept a reduced period of penitentiary time. For the reasons set forth below, we reverse and remand the cause for a new trial.

The principal disagreement between the defense and the State in this case is whether the communication between the assistant state's attorney and defense counsel rose to the dignity of an "offer," as claimed by defendant, or whether such indefiniteness permeated the State's communication as to reduce it to an "off-hand remark" which need not have been relayed to defendant, as claimed by the State. The affidavit sworn to by James Schreier, then assistant state's attorney, in pertinent part, reads as follows:

"6. That to the best of affiant's recollection he communicated before trial commenced, the following statement, in word or effect, to attorney Leonard Karlin: *'Will your client take penitentiary time (the exact term of years I cannot now recall) on a plea of guilty to voluntary manslaughter?'*

7. That sometime afterward, but before the trial started, affiant was approached by attorney Leonard Karlin with a negative response to the previous question concerning the defendant's change of plea." (Emphasis added.)

Defendant's counsel at that time, Leonard Karlin, submitted an affidavit in which he stated, with regard to this issue, in pertinent part:

"* * * The discovery material showed that the state's case was worthless and so full of holes, and dependent upon such incredible witnesses that he not only proceeded, but waived the jury.

The state's attorney did not offer any reduction in charges, and under the circumstances that the least term available was 14 years, * * * it was not worth sacrificing appellate rights by pleading to murder.

The state did not at anytime offer to reduce the charge of murder. Under the circumstances, counsel, who had expected an offer which never came, said to the relatives that we have no alternative but to fight the case to its conclusion * * *."

Two of defendant's relatives averred by affidavit that they heard Karlin acknowledge the transmittal of an offer in return for a plea but that he said they would not accept the "offer" because he thought defendant would "beat" the State's case against him. An affidavit by an assistant public defender relates to Karlin's recollection of events and *modus operandi*.

The trial court viewed the affidavits with some ambivalence. It first stated:

> "I am more troubled by the issue concerning the question of the alleged failure of the attorney to convey to his client a recommended reduced offer reducing the charge to voluntary manslaughter for some time. No time specifically having been spoken of. My problem in that regards is simply this: had there been a request for a conference, and had the court indicated that he would accept the plea on the lesser included charge of voluntary manslaughter, and he would impose a sentence of 'X' number of years, and that was not conveyed to the defendant, I would without hesitation based upon those facts, if they were agreed upon, be granting your request for relief on the P. C. * * *.
>
> * * *
>
> * * * I will find that there was an offer to the memory of Jim Schreier * * * and to the recollection of the two * * * affiants who are related to Mr. Ferguson, that Mr. Karlin, the then defense counsel, had spoken of some offer made by the State to Mr. Karlin on behalf of Mr. Ferguson.
>
> I would find that is true, even though Mr. Karlin does not recall the case. However, even if that were true * * * there is no specificity as to terms, but even more importantly there is absolutely no indication that the trial judge * * * would have accepted * * * the reduced plea on the reduced charge, * * *."

If the communication can be deemed an offer by the State to reduce the charge and the time to be served in return for a guilty plea, defendant's claim of error must be sustained.

■■■ In *People v. Whitfield* (1968), 40 Ill. 2d 308, 239 N.E.2d 850, the supreme court held that a defendant has the constitutional right to be advised by his counsel of the State's offer of a lesser degree of punishment in return for a plea of guilty to a reduced charge on the proposition that (40 Ill. 2d 308, 311):

> "A defendant has the right to decide whether to appeal or not to appeal (*Fay v. Noia*, 372 U.S. 391, 9 L. Ed. 2d 837, 83 S. Ct. 822) as well as the right to decide whether to plead not guilty. (*Brookhart v. Janis*, 384 U.S. 1, 16 L. Ed. 2d 314, 86 S. Ct. 1245.) These rights and others go beyond trial strategy. It follows logically that if a defendant has the right to make a decision to plead not guilty, he also has the right to make the decision to plead guilty. Due process demands this protection. It was his choice, not that of his counsel * * *."

In order to sustain an alleged violation of this right, a defendant has the burden of showing that an offer to "accept a plea" was in fact made and

420

that it was not transmitted to him. *People v. Williams* (1970), 47 Ill. 2d 239, 241, 265 N.E.2d 107.

The application of contract principles to plea negotiations is fraught with problems of constitutional dimensions. Authorities on one hand reject such analogies, and on the other hand, there are authorities which apply them. For example, in *Cooper v. United States* (4th Cir. 1979), 594 F.2d 12, the terms of a plea agreement were withdrawn by the prosecution soon after that defendant advised his counsel that he would agree to accept the terms, but before the prosecution was informed of his acceptance. The court rejected a strict contract analysis, observing (594 F.2d 12, 17):

> "[A]nalogies from contract law will usually provide a reliable inclusive test for the existence of constitutional right and violation, but not an equally reliable exclusive test. * * * Just because the elements of express contract * * * have not been realized * * * cannot mean conclusively that there has been no unfairness in the constitutional sense."

The court further held (594 F.2d 12, 18):

> "We hold instead that under appropriate circumstances—which we find here—a constitutional right to enforcement of plea proposals may arise before any technical 'contract' has been formed * * *."

The reasoning in *Cooper* has been questioned in several cases, including some authority in Illinois (*Virgin Islands v. Scotland* (3d Cir. 1980), 614 F.2d 360; *People v. Robinson* (1980), 82 Ill. App. 3d 937, 939, 403 N.E.2d 604), chiefly on the basis of its recognition of a contract in the absence of a showing of detrimental reliance by the defendant. *Cf. People v. Young* (1977), 52 Ill. App. 3d 671, 674, 367 N.E.2d 976.

■■ In the facts before us, however, the issue of reliance does not arise because here defendant was never advised of the conversation alleged to have contained the "offer" to reduce the charge in return for a guilty plea, as in *People v. Whitfield*. The question here is whether the communication can be deemed an offer in any contractual sense which should have been conveyed to defendant which he could have accepted. We do not share the trial court's view that the communication should have been made in a pretrial conference setting, nor do we believe, pursuant to the authority of *People v. Whitfield*, that the offer being made must first be approved by the trial court before it can be considered a valid offer. In *Whitfield*, the supreme court specifically noted that "[t]here is nothing to indicate that the trial judge knew of the offer or its refusal." (40 Ill. 2d 308, 310.) In the sense that an offer can be deemed the presentation or proposal of some undertaking in exchange for another's stipulated act or forbearance, we find the fact that the assistant state's attorney's com-

munication, which asked counsel whether defendant will "* * * take penitentiary time (the exact term of years I cannot now recall) on a plea of guilty to voluntary manslaughter?" sets forth a proposal which could have been accepted with an unvarnished affirmative response, "yes," or rejected with an equally unadorned "no." Nor does the fact that the affiant could not recall in 1978 the exact term of years offered in 1972 relegate the proposal to an indefinite offer; that a certain number of years were then mentioned lends credence to the establishment of a specific enough term so as to support its status as an offer.

The difficulty encountered by the parties and the trial court in grappling with this issue stems from their efforts to establish a label for the communication, rather than analyse its content as one worthy of transmittal to defendant in fulfillment of a constitutional right. The American Bar Association Project on Standards for Criminal Justice (Standards), particularly those related to pleas of guilty, approved draft 1968 (Pleas of Guilty) and the prosecution function and the defense function, approved draft 1971, are illuminating in this regard. Those Standards suggest that plea negotiations fall into two categories, "plea discussions" and "plea agreements." Although we view the query made by the assistant state's attorney in the present case as an offer, it would at the very least fall into the category of a "plea discussion." In the commentary to sections 3.2(a) and (b), Relationship Between Defense Counsel and Client, of the Standards, Pleas of Guilty, it is observed that pleas of guilty must be based upon informed decisions, with the advice of counsel, to be made by defendants who need whatever information is available upon which can be predicted the consequences that would follow, stating (ABA Standards, Pleas of Guilty §3.2(a), (b), at 70 (1968)): "Thus, the defendant should be informed fully as to the charge or sentence concessions tendered by the prosecutor."

Further in the Commentary, relative to section 6.1(c), "Duty to Explore Disposition Without Trial," of the Standards, Defense Function, it is noted that even the most casual and informal discussion of a case can develop information useful to the defense. Within the Commentary to section 6.2, "Conduct of Discussions," of the Standards, Defense Function, the following note is of particular application to the communication before us (ABA Standards, The Defense Function §6.2, at 250 (1971)):

> "Because plea discussions are usually held without the accused being present, there is a duty on the lawyer to communicate fully to his client the substance of the discussions. It is important that the accused be informed of proposals made by the prosecutor; the accused, not the lawyer, has the right to pass on prosecution proposals, even when a proposal is one which the lawyer would not approve. If the accused's choice on the question of a guilty

plea is to be an informed one, he must act with full awareness of his alternatives, including any that arise from proposals made by the prosecutor."

■■ The foregoing commentaries demonstrate the importance of communications to the constitutional rights of defendants which transcends their labeling as either an "offer" or a "plea discussion." Whether deemed either one, if it contains such information as that which we have under consideration in the instant case, it should be transmitted to defendant for such action as he might consider in his best interest under the due process clause of the Constitution. (*People v. Whitfield* (1968), 40 Ill. 2d 308, 311.) Under these circumstances the trial court's disposition of the post-conviction petition was manifestly erroneous (*People v. Santiago* (1974), 58 Ill. 2d 81, 83, 317 N.E.2d 1) and must be reversed. The cause is remanded for a new trial.

Reversed and remanded.

PERLIN, P. J., and STAMOS, J., concur.