THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ALBAN F. SAUNDERS, Defendant-Appellant.

Second District    No. 83—1040

Opinion filed July 3, 1985.—Rehearing denied September 12, 1985.

G. Joseph Weller, Paul J. Glaser, and Michael F. Braun, all of State Appellate Defender's Office, of Elgin, for appellant.

Eugene L. Stockton, State's Attorney, of Dixon (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

Defendant appeals from his conviction of murder (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(1)) following a jury trial in the circuit court of Lee County. He was sentenced to a term of 40 years' imprisonment. On appeal, defendant contends that: (1) the trial court erred in denying his motion for substitution of judges; (2) defendant's substantial compliance with the terms of a previous plea agreement precluded his prosecution for murder; (3) defendant was denied the effective assistance of counsel at the time the agreement was reached; (4) the use at trial of defendant's prior testimony in the trial of his co-conspirator and certain of defendant's statements to the prosecutor were violative of Supreme Court Rule 402(f) and principles of due process and voluntariness; (5) defendant is entitled to a reduction in his sentence based on his performance of the prior plea agreement; and, (6) the court improperly considered the manner in which the victim's body was disposed of as an aggravating factor.

On June 6, 1983, defendant was charged by information with one count of murder (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(1)) and one count of conspiracy (murder) (Ill. Rev. Stat. 1981, ch. 38, par. 8—2(a)). The charges arose from defendant's involvement in the strangulation death of Stuart Kelly Young on October 16, 1981. On June 24, 1983, defendant moved for a substitution of judges, which was denied.

Prior to trial, defendant moved to suppress all oral and written statements, admissions, and testimony, either exculpatory or inculpatory, which were alleged to have been made prior to, at the time of, or subsequent to defendant's arrest on March 25, 1983. The motion alleged, specifically, that on November 9, 1981, and on subsequent dates thereto, defendant was interrogated by law enforcement officials from Lee and Ogle counties, that on that date defendant requested that an attorney confer with him, and that attorney David T. Fritts was contacted and discussed various matters concerning the death of Stuart Kelly Young. The motion also alleged that following these discussions attorney Fritts entered into negotiations with the State's Attorneys of Lee and Ogle counties, and that prior to any statements being made by defendant a negotiated agreement was entered into between defendant and the State's Attorneys. The motion further alleged that any statements, admissions, and testimony which

followed the making of said agreement should be suppressed as being obtained as a result of promises of leniency and/or immunity to the defendant which were not fulfilled and were therefore involuntary. A motion to dismiss was also filed on the basis that defendant had received immunity from prosecution for the offense charged.

According to the terms of the negotiated agreement, defendant "agreed to give a full and complete statement as to his knowledge of the murder of Stuart Kelly Young" to the authorities. State's Attorney Schumacher testified at a motion to dismiss hearing that he had stressed to Fritts that the agreement would no longer be valid if Saunders kept information from the police. Defendant also agreed to testify in conformance with his statement to the police against any defendant who was arrested as a result of his statement. Additionally, defendant agreed to undergo a polygraph examination, which he did and passed. In exchange for defendant's cooperation, the Lee and Ogle County State's Attorneys' offices agreed to charge defendant with the offense of concealing a homicide in a county of proper venue "if [defendant] could not be charged as a principal in the murder" based upon defendant's statement and the polygraph examination. Further, the State's Attorneys agreed to recommend that defendant be sentenced to probation "if he did not physically contribute to the death of Stuart Kelly Young." However, if defendant did physically contribute to such death, "but said contribution did not rise to the level of a principal in the offense," it would be recommended that defendant be sentenced to two years in the Department of Corrections. Finally, the State's Attorneys agreed that defendant would "either be released on a recognizance bond on a charge of Concealing a Homicide or would be charged at a later date."

Defendant's motion to dismiss alleged that pursuant to the advice of counsel, defendant "complied in all respects with the agreement" by giving "several full and complete statements" as to his knowledge of the murder, by giving police officials various leads which developed later evidence, by taking the polygraph, by testifying on February 12, 1983, against Charles Danek, defendant's co-conspirator in the murder, and by speaking with the investigators of both counties concerning additional clarification which they required. Finally, defendant alleged that because he complied in all respects with the foregoing agreement, he was immune from prosecution on the present charges of murder and conspiracy (murder). The State responded to defendant's motion to dismiss by admitting the existence of the agreement and the substance of its terms, but denying that defendant gave a full and complete statement prior to the trial of Danek. The State argued

that defendant therefore did not comply in all respects with the agreement.

At the hearing on defendant's motion to dismiss, defense attorney David Fritts testified that prior to any negotiations, he advised defendant of his *Miranda* rights. Following the completion of the negotiations, Fritts advised defendant to "[t]ell them exactly what he told me, not to leave anything out, to be complete and honest and open ***." Counsel advised defendant that the most he would be getting was two years in prison; other than this, defendant did not know the specifics of the agreement.

At the hearing, Fritts also testified that at Danek's trial in February 1982, Fritts discovered that defendant had not disclosed all the information either to the authorities or to Fritts: namely, that defendant had placed a syringe of air into the victim's arm. After trial, Fritts discovered that defendant and Danek had been in a car accident together on the Peoria Avenue Bridge. Additionally, in January 1983 it was discovered that certain evidence had been thrown off the Grand Detour Bridge, and that other evidence had been discarded on the Rock Island blacktop. Dixon police officer Larry Hagen stated that a witness to the accident was discovered who might have provided corroborative testimony at Danek's trial. Danek was ultimately acquitted of the charges against him.

At the hearing on the motion to dismiss, the prosecutor argued that defendant's use of the syringe made him a principal in the crime. It was further argued that defendant violated the terms of the agreement by failing to disclose all information prior to Danek's trial. Defendant's motion to dismiss was denied.

At the hearing on the motion to suppress, the prosecutor originally agreed that defendant's statements made prior to July 12, 1982, were plea-related and therefore inadmissible under Rule 402(f) (87 Ill. 2d R. 402(f)). Defendant's motion to suppress was therefore granted. The stipulation covered Saunders' testimony at Danek's trial and a January 31, 1982, telephone conversation between defendant and State's Attorney Stockton. Later, the prosecutor was allowed to withdraw his stipulation that the testimony was inadmissible. Following a subsequent hearing on defendant's motion to suppress, the motion was denied as to both the telephone conversation and defendant's prior testimony at Danek's trial.

The cause then proceeded to trial. The underlying facts surrounding the offense at bar are not relevant to the issues raised by defendant on appeal, and will therefore be discussed only briefly here. According to Saunders' testimony at Danek's trial, defendant and

Charles Danek conspired to murder Stuart Kelly Young, apparently because Young was blackmailing Danek. Around October 16, 1981, Danek and Saunders were on their way back to Saunders' apartment when they saw Young. The three men went to Saunders' apartment and began to play cards. Danek left the game to go to the bathroom and returned with an 8-inch long piece of rope, which he slipped around Young's neck. Saunders watched as Danek strangled Young. Then defendant got up to keep Young's chair from falling over and making noise. Saunders also "batted" Young's hands away from the rope. After Young was dead, the defendant used a syringe to inject air into Young's arm.

After hearing the evidence and arguments of counsel, the jury found defendant guilty of the offense of murder. Following the denial of defendant's motion for a new trial and the sentencing of defendant, a timely notice of appeal was filed.

Defendant first contends that the lower court erred when it denied his motion for substitution of judges on the ground that it was not timely filed and that it named too many judges.

■■ Initially, we note that the instant argument was not included in defendant's post-trial motion for a new trial. An error not raised in the post-trial motion is waived, even when the issue was raised in the trial court and the defendant's objection was overruled. (*People v. Winston* (1982), 106 Ill. App. 3d 673, 686, 435 N.E.2d 1327.) When a claim of error has not been so preserved it may only be considered by a reviewing court under the plain error doctrine set forth in Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)). The doctrine of plain error may be invoked where the evidence is closely balanced or where the error was of such a magnitude that the accused was denied a fair trial. (106 Ill. App. 3d 673, 686, 435 N.E.2d 1327.) After reviewing the merits of defendant's argument we decline to invoke the plain error rule here.

Defendant's motion to substitute judges stated that it was being filed pursuant to section 114—5(a) of the Code of Criminal Procedure (Ill. Rev. Stat. 1983, ch. 38, par. 114—5(a)). That section provides:

Sec. 114—5. Substitution of Judge. (a) *Within 10 days after a cause involving only one defendant has been placed on the trial call of a judge* the defendant may move the court in writing for a substitution of that judge on the ground that such judge is so prejudiced against him that he cannot receive a fair trial. Upon the filing of such a motion the court shall proceed no further in the cause but shall transfer it to another judge not named in the motion. The defendant may name only one judge as preju-

diced, pursuant to this subsection; provided, however, that in a case in which the offense charged is a Class X felony or may be punished by death or life imprisonment, *the defendant may name two judges as prejudiced."* (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 38, par. 114—5(a).)

It is apparent on its face that defendant's motion for a substitution of judges was not in proper form. The motion named three judges—Judge Bales, Judge Rapp, and Judge Knowlton—rather than two, which is the maximum permitted under the above-quoted statute. Defendant argued that the motion was one "for cause" as to Judge Knowlton (see Ill. Rev. Stat. 1983, ch. 38, par. 114—5(c)), and thus that only two judges were actually named pursuant to section 114—5(a). However, even assuming this to be true, and assuming defendant could properly combine a motion to substitute "not for cause" with a motion to substitute "for cause," no affidavit was ever filed in support of the "for cause" portion of the motion, as required by section 114—5(c) (Ill. Rev. Stat. 1983, ch. 38, par. 114—5(c)). While defense counsel indicated at the hearing that he intended to file an affidavit as to Judge Knowlton, no affidavit was forthcoming. Defense counsel at the hearing also stated that that portion of the motion relating to Judge Knowlton had been withdrawn, but this claim was disputed by the State's Attorney, and no evidence is contained in the record that it was in fact withdrawn. Thus, it is clear that the motion was not in proper form, and denial of the motion on this basis was proper. *People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 63, 364 N.E.2d 50.

Additionally, it is clear that the motion was not timely filed. The record sheet indicates that the case was placed on Judge Bales' trial calendar on June 6, 1983. The motion was not filed until June 24, 1983, 18 days later. Section 114—5(a) of the statute clearly states that any such motion must be filed within 10 days after the cause has been placed on a judge's trial call. (Ill. Rev. Stat. 1983, ch. 38, par. 114—5(a).) Although counsel on appeal argues that notice of the trial judge was not received until the arraignment on June 20, 1983, the record indicates to the contrary. At a hearing on June 6, 1983, defense counsel stated to the court, "[The arraignment is] before Judge Bales, is that correct, Your Honor?" The court responded, "I believe." We think this comment is indicative of counsel's awareness on June 6 that the cause had been placed on Judge Bales' trial calendar.

■ Finally, we reject defendant's claim that the motion was improperly heard by Judge Bales since he was a named judge in the motion. Defendant failed to object on this basis during the hearing and thus it is waived on appeal. Further, there is nothing in the language

in section 114—5(a) (Ill. Rev. Stat. 1983, ch. 38, par. 114—5(a)) which prevents a judge from determining in the first instance whether the motion for substitution is in proper form or is filed within the time limit set forth in the statute.

■ Defendant next contends that his due process rights were violated when the State prosecuted him for murder following his substantial compliance with the terms of the prior plea agreement. Utilizing a contract law analysis, defendant argues that because his breach of the agreement was not "material," the State must, in essence, "specifically perform" its promise to prosecute defendant only on the charge of concealing a homicidal death. (Ill. Rev. Stat. 1981, ch. 38, par. 9—3.1(a).) The State argues that this issue has been waived. Alternatively, on the merits the State maintains that the due process clause was not violated because the defendant was not "deprived of [his] liberty in any fundamentally unfair way" (see *People v. Boyt* (1984), 129 Ill. App. 3d 1, 21, 471 N.E.2d 897), and because the defendant's breach was material.

Initially, we consider the State's contention that defendant has waived this issue for his failure to raise it in his post-trial motion. While the general rule is that such a failure constitutes waiver, we will consider the issue in light of the substantial question of constitutionality which is involved and the seriousness of the charge here. *People v. McNeal* (1983), 120 Ill. App. 3d 625, 627-29, 458 N.E.2d 630.

In *People v. Starks* (1985), 106 Ill. 2d 441, our supreme court had occasion to consider the question whether a defendant was entitled to enforcement of an agreement between the State and the defendant which required the State to dismiss its case against defendant if the defendant took and passed a polygraph. In that case, the defendant did take and pass a polygraph pursuant to the terms of the agreement, but the State subsequently reneged on its end of the bargain. The court discussed the bargaining relationship between the State and a defendant charged with a crime, as well as the importance of maintaining the integrity of the plea-bargaining process. The court utilized certain contract law principles, *i.e.*, "legal consideration," in determining that the defendant was entitled to enforcement of the agreement, stating that consideration was given by defendant when he submitted to the polygraph examination since by doing so defendant surrendered his fifth amendment privilege against self-incrimination. (106 Ill. 2d 441, 448-49.) Having thus reasoned that legal consideration was present, the court held that if the State in fact made an agreement with the defendant, it was bound by that agreement.

■ While it is clear that the defendant here gave up his constitutionally protected right to remain silent in reliance upon the State's promise to prosecute him only on the charge of concealing a homicidal death, this was not the entire agreement between the parties. Pursuant to the agreement, defendant was also to provide "a full and complete statement as to his knowledge of the murder" of Stuart Kelly Young. According to State's Attorney Schumacher, the agreement's validity was dependent upon defendant's full and complete disclosure to the police. Attorney Fritts also indicated that this was his understanding of the agreement. It is also undisputed that defendant failed to tell everything he knew about the murder, and that after the trial of Danek the State learned additional facts through third parties which, upon investigation, might have prevented Danek's acquittal. The purpose of the agreement here was to obtain evidence which would lead to the murder conviction of Charles Danek. Without defendant's cooperation no case against Danek could be developed. Because this case deals with the defendant's omission of certain facts, which omission resulted in a failure of the authorities to investigate all the circumstances surrounding the murder, it is impossible to ascertain the precise degree of damage caused by defendant's failure to disclose everything he knew. Under these circumstances, we conclude that the deprivation of defendant's liberty interest was not due to the State's unwarranted repudiation of the negotiated agreement, but rather to the defendant's own failure to fulfill his end of the bargain. Having so concluded, we find no due process violation in the State's subsequent prosecution of defendant on the charge of murder. We believe that to hold otherwise would encourage less than full compliance by defendants with the terms of their negotiated agreements and would undermine the value in and purpose of the plea-bargaining process.

■ Defendant next contends that his breach of the negotiated agreement was due to the ineffective assistance rendered by defense counsel. Specifically, defendant contends that counsel was ineffective for failing to fully disclose all the terms of the plea agreement. We disagree.

In order to establish ineffective assistance of counsel, defendant must demonstrate: (1) that his counsel's performance was deficient; and, (2) that the deficient performance prejudiced the defense. *People v. Barnard* (1984), 104 Ill. 2d 218, 237, 470 N.E.2d 1005.

A defendant has a constitutional right to be advised by his counsel of the State's offer of a lesser degree of punishment in return for a plea of guilty to a reduced charge. (*People v. Ferguson* (1980), 90 Ill.

App. 3d 416, 419, 413 N.E.2d 135; *People v. Whitfield* (1968), 40 Ill. 2d 308, 311, 239 N.E.2d 850.) Further, under the ABA Standards, The Defense Function, a lawyer has a duty "to communicate fully to his client the substance of the discussions, since the accused, not the lawyer, has the right to pass on prosecution proposals." (ABA Standards, The Defense Function sec. 6.2, at 250 (1971).) If an "accused's choice on the question of a guilty plea is to be an informed one, he must act with full awareness of his alternatives, including any that arise from proposals made by the prosecutor." ABA Standards, The Defense Function sec. 6.2, at 250 (1971); see also *People v. Ferguson* (1980), 90 Ill. App. 3d 416, 421-22, 413 N.E.2d 135.

In the instant case, defendant was in fact advised that an offer had been made by the State. (*Cf. People v. Ferguson* (1980), 90 Ill. App. 3d 416, 413 N.E.2d 135; *People v. Whitfield* (1968), 40 Ill. 2d 308, 239 N.E.2d 850.) Further, attorney Fritts testified that he did in fact advise defendant "of the parameters of the agreement," including the fact that he was to tell the authorities "exactly what he told me, not to leave anything out, to be complete and honest and open." Defense counsel also advised that the most defendant would be getting "if he told the truth" would be two years in prison. Because defendant was advised of this most critical portion of the agreement, he cannot now complain that his failure to tell everything he knew was due to his counsel's lack of communication on this point.

Further, defense counsel's reason for not telling defendant the other aspects of the plea agreement was his concern that defendant might tailor his statement to fit the agreement rather than merely telling the truth. Thus, counsel's silence on the remaining portions of the agreement was the tactic used to ensure that the plea agreement would not be violated by defendant's manufactured statement. Additionally, defense counsel was not aware of defendant's use of the syringe at the time of the negotiations, and the agreement was reached based upon the disclosures that were made to Fritts by defendant. Had Fritts known of this circumstance, he likely could have negotiated with the State on this point as well. Thus, we conclude that the failure to communicate every aspect of the agreement to defendant was neither incompetency of counsel, nor resulted in prejudice to defendant.

■ Defendant next argues that his previous trial testimony and his telephoned statements made to the prosecutor should have been suppressed as violative of Supreme Court Rule 402(f) (87 Ill. 2d R. 402(f)) and principles of due process and voluntariness. He also argues that the trial court erred in permitting the prosecutor to withdraw his

previous stipulation that these statements were inadmissible under Supreme Court Rule 402(f).

Initially, we find no error in the trial court's allowing the prosecutor to withdraw his previous stipulation. The stipulation was essentially that the State would not seek the admission of these statements because it agreed with the defendant that they were "inadmissible pursuant to Supreme Court Rule 402(f)." (87 Ill. 2d R. 402(f).) However, while a stipulation between parties as to the facts is conclusive so long as it stands, parties cannot bind a court by stipulating to a question of law or the legal effect of facts. (*Domagalski v. Industrial Com.* (1983), 97 Ill. 2d 228, 235, 454 N.E.2d 295.) The State's stipulation in the present case that these statements were inadmissible under Rule 402(f) was a stipulation of law which could not bind the court. Thus, a subsequent withdrawal of the stipulation and a hearing on the merits of the question was not error.

Considering the merits of defendant's appellate contention, the defendant first claims that the testimony and statement were plea-related under Rule 402(f), which provides:

"If a plea discussion does not result in a plea of guilty, or if a plea of guilty is not accepted or is withdrawn, or if judgment on a plea of guilty is reversed on direct or collateral review, neither the plea discussion nor any resulting agreement, plea, or judgment shall be admissible against the defendant in any criminal proceeding." (87 Ill. 2d R. 402(f).)

Implicit in the promulgation of this rule was the Supreme Court's recognition of the significance of the negotiation process to the administration of justice. (*People v. Friedman* (1980), 79 Ill. 2d 341, 351, 403 N.E.2d 229.) The purpose of the rule is "to encourage the negotiated disposition of criminal cases through elimination of the risk that the accused enter plea discussion at his peril." (79 Ill. 2d 341, 351, 403 N.E.2d 229.) Illinois case law discussing what constitutes a "plea-related" discussion pursuant to Supreme Court Rule 402(f) has focused upon discussions occurring prior to the reaching of an agreement between the parties. (See, *e.g.*, *People v. Friedman* (1980), 79 Ill. 2d 341, 403 N.E.2d 229; *People v. Hill* (1980), 78 Ill. 2d 465, 401 N.E.2d 517; *People v. Victory* (1981), 94 Ill. App. 3d 719, 419 N.E.2d 73.) While neither the parties nor this court could discover any Illinois cases dealing with statements made after a negotiated agreement has been reached, we will consider several Federal court cases which have dealt with this issue. See *United States v. Stirling* (2d Cir. 1978), 571 F.2d 708, 730-32, *cert. denied* (1978), 439 U.S. 824, 58 L. Ed. 2d 116, 99 S. Ct. 93; *United States v. Grant* (8th Cir. 1980), 622 F.2d 308;

*United States v. Davis* (D.C. Cir. 1979), 617 F.2d 677.

In *United States v. Stirling* (2d Cir. 1978), 571 F.2d 708, 730-32, *cert. denied* (1978), 439 U.S. 824, 58 L. Ed. 2d 116, 99 S. Ct. 93, the court considered the question whether a defendant's testimony to a grand jury, given pursuant to the terms of a plea agreement, was inadmissible under Fed. R. Crim. P. 11(e)(6). That rule barred the use in civil or criminal proceedings of any statements made "in connection with, and relevant to" any offer or plea. (See *United States v. Stirling* (2d Cir. 1978), 571 F.2d 708, 730 n.17, for substance of rule.) The court discussed the policy behind the rule, saying that "for plea bargaining to work effectively and fairly, a defendant must be free to negotiate without fear that his statements will later be used against him." (571 F.2d 708, 731.) However, the court stated that " 'the primary concern of the draftsman *** was with fairly formal plea bargaining between the United States Attorney and counsel for defendant after charges had been, or were about to be made.' " (571 F.2d 708, 731, quoting 2 Weinstein's Evidence par. 410[07], at 410-40.) Defendant in *Stirling*, after testifying before the grand jury, failed to plead guilty thereby violating the terms of the agreement. Under these circumstances the court held that the grand jury testimony was admissible against defendant at a subsequent trial, stating:

"It simply cannot be said that Schulz was engaged in a 'discussion' with the Grand Jury in an attempt to obtain concessions from the government in exchange for his plea *** The plea agreement had already been reached by the time Schulz went before the Grand Jury. The negotiations were over. All Schulz had to do was live up to his end of the bargain. His failure to do so justly exposed him to prosecutorial use of his Grand Jury testimony." (571 F.2d 708, 732-33.)

The court further stated:

"It may be true that Schulz would not have testified before the Grand Jury had it not been for the plea agreement, but this is not in itself sufficient for suppression of that testimony under Rule 11(e)(6). Schulz voluntarily negotiated his plea agreement, voluntarily appeared before the Grand Jury, and voluntarily decided to violate his plea agreement. He could have relied on the agreement to protect himself.
* * *
His breach of the agreement removed that protection. Such a result can hardly be said to undercut the confidence and candor needed for successful and fair plea negotiations. It simply means that once the agreement is finalized its terms will be en-

forced." (571 F.2d 708, 732.)

See also *United States v. Grant* (8th Cir. 1980), 622 F.2d 308; *United States v. Davis* (D.C. Cir. 1979), 617 F.2d 677.

In *Davis,* the court considered the same issue and reached the same conclusion, stating:

"Rule 11(e)(6) seeks to promote negotiated dispositions of criminal cases by giving the defendant protection from involuntary self-incrimination at two ends of the plea-bargaining spectrum: while he is negotiating over the disposition of his case and while he is offering or entering a plea that is rejected or later withdrawn.

\* \* \*

Excluding testimony made after-and pursuant to-the agreement would not serve the purpose of encouraging compromise. Indeed, such a rule would permit a defendant to breach his bargain with impunity: he could renounce the agreement and return to the status quo ante whenever he chose, even though the Government has no parallel power to rescind the compromise unilaterally. *See Santobello v. New York,* 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971). The drafters of rule 11(e)(6) could not have contemplated such a result." 617 F.2d 677, 683, 685.

■ We adopt the rationale of these authorities, and conclude that defendant's prior testimony and statement to the prosecutor in the instant case did not fall within the ambit of Supreme Court Rule 402(f). (87 Ill. 2d R. 402(f).) This is not a situation where the agreement has been withdrawn or unaccepted by the court, but is rather a situation where the defendant himself was in breach of the agreement. Being in this position, the defendant cannot complain about the State's failure to live up to its end of the bargain. Further, the defendant's testimony, although made after and pursuant to the agreement, was not made while he was negotiating over the disposition of his case. Thus, the purpose of the rule, *i.e.,* to "encourage the negotiated disposition of criminal cases," would not be served by rendering the statements inadmissible. (*People v. Friedman* (1980), 79 Ill. 2d 341, 351, 403 N.E.2d 229.) In fact, as pointed out by the court in *Davis,* such a holding would permit the defendant to "breach his bargain with impunity." *United States v. Davis* (D.C. Cir. 1979), 617 F.2d 677, 685.

■ We also reject defendant's contention that the testimony and statement were involuntarily given because they were made pursuant to the agreement. A promise of leniency is only one factor to be considered in determining whether a statement was voluntarily given. (*People v. Noe* (1980), 86 Ill. App. 3d 762, 765, 408 N.E.2d 483.) The

ultimate question is whether, considering the totality of the attendant circumstances, defendant's will was overborne at the time he confessed. 86 Ill. App. 3d 762, 765, 408 N.E.2d 483.

The circumstances in the instant case make it clear that defendant's will was not overborne at the time he made the statement to the prosecutor, or when he gave his previous trial testimony. In fact, the record indicates that it was defendant who wished to enter into a negotiated agreement, that defense counsel went to the authorities specifically to see "what might be arranged," and that defendant was fully advised of his *Miranda* rights. Further, it is clear that defendant initiated the telephone conversation with the prosecutor, who later advised defendant to go through his attorney. There is nothing in the record to indicate that defendant's testimony at Danek's trial was the product of an overborne will. His counsel apparently was available for consultation throughout the trial, and defendant himself stated that he gave his testimony because the circumstances were "bothering his conscience." Under these circumstances, we conclude that neither the testimony nor the telephoned statement were involuntarily given. Thus, the admission of this evidence at defendant's trial was not error.

■ Relying upon contract principles, defendant next argues that he should be entitled to a reduction in his sentence because of his "good faith" partial performance under the negotiated agreement. This argument is without merit. Plea agreements are generally governed by principles of contract law and where broken will entitle the defendant to withdraw his plea. (*Cf. Government of the Virgin Islands v. Scotland* (3d Cir. 1980), 614 F.2d 360.) Here, however, there was no plea to withdraw, and the case was tried. In the absence of a valid plea agreement, the sentencing function is totally within the power of the judiciary to perform. (*Cf. People v. Weeks* (1976), 37 Ill. App. 3d 41, 44, 344 N.E.2d 791, where it was held that an agreement in plea negotiations is at most a recommendation and the sentence is up to the court and the court alone.) Defendant does not argue that his sentence was otherwise excessive or that the statutory factors were not considered by the court in sentencing. The sentence received was within the statutory limits prescribed for the crime of murder (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)), and therefore the sentence is presumed to be valid. *People v. Rich* (1979), 77 Ill. App. 3d 902, 904, 396 N.E.2d 824.

■ Defendant's .final contention is that the court improperly considered the manner in which the victim's body was disposed of as an aggravating factor for sentencing purposes. This argument, too, is

without merit. Relying upon *People v. Schlemm* (1980), 82 Ill. App. 3d 639, 402 N.E.2d 810, defendant contends that some decomposition is inherent when the body is concealed. However, defendant here was not prosecuted for concealing a homicide, as in *Schlemm*, but was prosecuted for and convicted of the offense of murder. Concealment of a body and exposure of that body to the elements is not inherent in every murder. In *People v. LaPointe* (1981), 88 Ill. 2d 482, 498-99, 431 N.E.2d 344, the court held that a trial court may properly consider as an aggravating factor proof of other criminal conduct for which no prosecution and conviction ensued. Here, defendant admitted the fact of concealment and thus the trustworthiness of this evidence was not in question. (88 Ill. 2d 482, 498, 431 N.E.2d 344.) We therefore conclude that the trial court's consideration of this factor in sentencing was not error.

For the reasons expressed above, the judgment of the circuit court of Lee County is affirmed.

Affirmed.

REINHARD and SCHNAKE, JJ., concur.