2021 IL App (1st) 181781-U

No. 1-18-1781

Order filed January 25, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 9547 |
| | ) | |
| CHEVALIER BARNES, | ) | Honorable |
| | ) | Ramon Ocasio III, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justices Hyman and Pierce concurred in the judgment.

**ORDER**

¶ 1     *Held*: We affirm the circuit court's summary dismissal of defendant's postconviction petition alleging ineffective assistance of trial counsel based on his attorneys' failure to initiate plea negotiations.

¶ 2     Following a 2016 jury trial, defendant Chevalier Barnes (defendant) was found guilty of burglary (720 ILCS 5/19-1(a) (West 2014)) and sentenced as a Class X offender to 15 years' imprisonment. Defendant did not pursue a direct appeal.

¶ 3        In June, 2018, defendant filed a petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)), alleging ineffective assistance of counsel based on his attorneys' failure to initiate plea negotiations with the State. The circuit court summarily dismissed the petition, finding it frivolous and patently without merit. Defendant appeals, arguing the petition alleged an arguable claim of ineffective assistance of counsel. We affirm.

¶ 4        At trial, Paul Odle, the operations manager for Supreme Catering (Supreme), testified that Supreme is open Monday through Saturday and closed on Sundays. On Saturday, May 30, 2015, he received a phone call from a supervisor informing him he was unable to set the alarms at the facility. On Sunday, May 31, 2015, at approximately 10:00 a.m., Odle went to the facility to set the alarms. When he arrived, he observed damage to the rear overhead door of the central warehouse and called 911 because it "looked like somebody had broken into the building."

¶ 5        Officer David Gude responded to the call. After assessing the damage, Gude went with Odle to the mechanic's office to review surveillance footage. The footage showed someone crawling through the damaged overhead door at around 9:00 a.m. that morning. While Gude was preparing his police report, Odle continued to monitor video footage from the 16 cameras located throughout the facility. As he was going through the already recorded footage, he observed "someone breaking through the same***overhead door" on one of the security system cameras.

¶ 6        Odle and Gude immediately proceeded to the central warehouse, where they observed defendant inside the supervisor's office. Gude arrested defendant, and recovered a black and silver cloth bag, a railroad spike and a pair of yellow gloves, the same items depicted in the surveillance footage. Defendant did not have permission to enter the central warehouse, tear open the overhead

door, break open the door to the supervisor's office, or take anything from within the warehouse on May 31, 2015.

¶ 7    At trial, Odle authenticated the surveillance video footage that was recorded both inside and outside the central warehouse on May 31, 2015.[1] According to Odle, the surveillance footage showed that, around 9:21 a.m. on May 31, 2015, defendant approached the overhead door, began destroying it, and, around 9:33 a.m., crawled through a hole in the door. Defendant spent about 20 minutes inside the central warehouse before leaving, during which time he opened the doors to the supervisor's office and on two Supreme trucks. Around 11:07 a.m., defendant returned to the overhead door and crawled back inside the central warehouse. Finally, the video showed Gude arresting defendant around 11:09 a.m.

¶ 8    Gude testified that, after he arrested defendant and advised him of his *Miranda* rights (*Miranda v, Arizona*, 384 U.S. 436 (1966)), defendant stated that, "you have a video, no need for me to say anything," and declined further comment.

¶ 9    Fidel Morales testified that, in May 2015, he was a supervisor at Supreme. On May 29, 2015, he placed $117 in a desk drawer in his office and left for the weekend. When he returned the following Monday, he observed the door to his office had been damaged, his desk drawer had been opened, and the money was missing.

¶ 10    After being found guilty of burglary, defendant was sentenced to 15 years in the Illinois Department of Corrections. The court noted that defendant was Class X mandatory for purposes

---

[1] Defendant failed to submit the surveillance footage with the record on appeal. However, since Odle described the footage as it was played during his testimony, we defer to his description. *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 319 (2003) (all doubts arising from the incompleteness of the record will be resolved against the appellant).

of sentencing based on his 10 prior felony convictions. Defendant did not file a motion to reconsider sentence or pursue a direct appeal.

¶ 11    In June 2018, defendant filed a post-conviction petition alleging ineffective assistance of counsel. Specifically, defendant alleged that he instructed one of his attorneys "to speak with the State about a plea agreement," and his attorney "provided simply that, she and [his other attorney] believed that they could beat (win) the case, without consultation." According to defendant, his attorneys "failed to abide by [his] decision to seek a plea agreement" or "make any effort to ensure that [he] possessed information reasonably adequate to make an informed decision to proceed to trial." He asserted that his attorneys' failure to seek a plea agreement fell below an objective standard of reasonableness because if his attorneys had requested an offer, one "would have more than likely been presented to the court, and [he] would have accepted the deal and the sentence would have been less severe than the judgment imposed."

¶ 12    Defendant attached his own affidavit to the petition, in which he averred, in relevant part, that he directed one of his attorneys "to seek a plea, from the state, prior to trial, but was informed, without support as to evidence that would lead [his attorneys] to believe, that they could win the case." He also claimed that "had counsel sought and secured a plea deal, [he] would have accepted the deal."

¶ 13    Defendant also attached the affidavit of Wendell Thompson to the petition. Thompson attested that he was represented by the same two attorneys as defendant in two unrelated cases, and encountered similar purported deficiencies in their representation.

¶ 14    The circuit court summarily dismissed defendant's petition in a written order, finding it was frivolous and patently without merit. The court observed that an attorney's decision to pursue

plea negotiations fell within the realm of trial strategy or professional judgment and stated counsel's strategy of proceeding to trial instead of pursuing plea negotiations was a matter of trial tactics. The court explained that defendant was unable to establish prejudice because there was no evidence that he would have received a more lenient sentence pursuant to a plea agreement. The court declined "to indulge in complete speculation about potential, alternative results," a task it found was "unworkable," noting that it was "unclear whether plea discussions***would even have been available to petitioner" and "ascertaining whether a plea offer would have been more advantageous for petitioner [was] especially problematic."

¶ 15    The Act sets forth a procedure by which a criminal defendant can assert his conviction resulted from a substantial denial of his rights under the United States Constitution, the Illinois Constitution, or both. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). The Act contemplates a three-stage proceeding, which is initiated by the filing of a petition. *Id.* at 9-10; 725 ILCS 5/122-1(b) (West 2018). The petition must "clearly set forth the respects in which [the defendant's] constitutional rights were violated." 725 ILCS 5/122-2 (West 2018). The defendant must attach affidavits, records, or other evidence to support the allegations or explain his failure to do so, but the petition need not contain argument or citation and discussion of pertinent authority. *Id.* The failure to attach the necessary evidentiary materials or explain the absence of such materials is fatal to a postconviction petition and this alone justifies the petition's summary dismissal. *People v. Collins*, 202 Ill. 2d 59, 66 (2002).

¶ 16    Since the circuit court dismissed defendant's petition at the first stage, our review is *de novo*. *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010). At the first stage, the circuit court determines whether, taking all well-pleaded facts in the petition and supporting materials as true, the petition

states the gist of a constitutional violation. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). The court will dismiss the petition if it is frivolous and patently without merit, but the threshold to survive summary dismissal is low. *Hodges*, 234 Ill. 2d at 9-10. A petition is frivolous and patently without merit where it has no arguable basis in law or in fact. *Id.* at 16. "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* Indisputably meritless legal theories are those which are completely contradicted by the record. *Id.* Fanciful factual allegations are those which are clearly baseless, fantastic, or delusional. *Id.* at 13, 17.

¶ 17    To prevail on a claim of ineffective assistance of counsel, the defendant must show his counsel's performance fell below an objectively reasonable standard and that he was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Caballero*, 126 Ill. 2d 248, 259-60 (1989). "At the first stage of proceedings under the Act, a petition alleging ineffective assistance of counsel may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Petrenko*, 237 Ill. 2d at 497. Because the defendant has the burden on both the performance and prejudice prongs, courts may resolve ineffective assistance claims by deciding only the prejudice prong. *People v. Coleman*, 183 Ill. 2d 366, 397-98 (1998).

¶ 18    A defendant makes an arguable showing of prejudice based on counsel's deficient performance where there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694. Speculative

claims of prejudice do not support claims of ineffective assistance, even at the first stage of postconviction proceedings. *People v. Viramontes*, 2017 IL App (1st) 160984, ¶ 53.

¶ 19    Here, defendant has failed to make an arguable showing that he was prejudiced by his attorneys' failure to seek a plea agreement. First, defendant has not shown that the State would have made a plea offer to him. See *People v. Jackson*, 213 Ill. App. 3d 806, 812 (1991) (there was no support in the record for the defendant's assertion that the prosecution had offered a four-year sentence in return for his guilty plea and, therefore, "[s]upporting affidavits were *** substantively necessary"); *People v. Ferguson*, 90 Ill. App. 3d 416, 418 (1980) (the defendant attached an affidavit from a prosecutor stating a plea offer was made); *People v. Whitfield*, 40 Ill. 2d 308, 309-10 (1968) (the defendant attached an affidavit from a prosecutor, who stated the terms of a plea offer made to defense counsel). This failure alone justifies summary dismissal. *Collins*, 202 Ill. 2d at 66.

¶ 20    Second, as defendant concedes, the evidence presented against him at trial was overwhelming. Defendant was seen on surveillance footage damaging the overhead door to the central warehouse, entering through a hole he had created in the door, opening the doors to the supervisor's office and two Supreme trucks, leaving through the hole he had created, returning about an hour later and being arrested inside the building. Additionally, neither the record nor defendant's petition reveal a viable defense to the charges. Given these circumstances, "there is no reason to believe that a plea agreement could have been reached" with the State. See *People v. Odle*, 151 Ill. 2d 168, 174 (1992) (finding there was no reason to believe a plea agreement could have been reached with the prosecution given the overwhelming evidence of the defendant's guilt).

¶ 21    Finally, even assuming, *arguendo*, that the State would have been willing to extend an offer to defendant, his claim that the offer would have been "less severe" than the sentence imposed after trial amounts to pure speculation. Accordingly, we find that defendant has failed to show that he was prejudiced by his attorneys' alleged deficient performance.

¶ 22    For all of the reasons set forth herein, we affirm the judgment of the circuit court.

¶ 23    Affirmed.