STATE OF WEST VIRGINIA *ex rel.*

WILLIAM C. BROWN

*v.*

THE HONORABLE A. ANDREW MACQUEEN,

JUDGE OF THE CIRCUIT COURT OF

KANAWHA COUNTY, WEST VIRGINIA

(No. 15352)

Decided December 18, 1981.

Cletus B. Hanley for relator.

*Chauncey H. Browning*, Attorney General, *and Richard S. Glaser, Jr.*, Assistant Attorney General, for respondent.

MCGRAW, JUSTICE:

This is an original proceeding in prohibition. The petitioner seeks to prohibit the Circuit Court of Kanawha County from bringing him to trial on charges of burglary, theft, grand larceny, and buying and receiving stolen goods. He argues that a grant of immunity given in exchange for his testimony at the trial of a defendant charged with a related offense precludes his prosecution. Although we find partial merit in the petitioner's argument, we deny the writ because prohibition is not a proper proceeding in which the petitioner should initiate his claim of immunity.

In March 1979, a number of rifles were stolen from the Kanawha County residence of Jack E. Sword. In January 1980, a two count indictment was returned against William Brown, the petitioner herein. Count one of the indictment charged the petitioner with the crime of feloniously and burglariously breaking and entering the residence of Mr. Sword and stealing the guns. Count two charged with feloniously and burglariously entering without breaking into the residence of Mr. Sword and stealing the guns. In September 1980 another two-count indictment was returned against the petitioner, charging him in the first count with grand larceny of the guns, and in the second count with buying, receiving, and aiding in the concealment and transfer of the guns to a person other than their rightful owner. Timothy Cooper was indicted at the same time on these two charges, and Willard Collins was indicted for buying and receiving stolen goods with respect to the same stolen guns.

On February 25, 1981, Willard Collins was brought to trial by the State. At trial the State called Timothy Cooper to testify against Collins. Pursuant to the State's request, the trial court granted immunity to Cooper in exchange for his testimony. Cooper testified that the petitioner sold the stolen guns to Collins, and that Collins knew the guns were stolen at the time he purchased them.

Counsel for Collins, acting under the mistaken belief that the petitioner would testify voluntarily in Collins' behalf, then called the petitioner to the stand. When informed by petitioner's counsel that the petitioner would not testify voluntarily, but would invoke his Fifth Amendment privilege against self-incrimination, counsel for Collins moved the court to grant the petitioner immunity and compel him to testify. Both the prosecuting attorney and counsel for the petitioner objected to this motion.

The trial court, after determining that the petitioner's testimony would be clearly exculpatory and essential to Collins' defense, and that the ends of justice would be promoted by compelling the petitioner to testify, granted

immunity to petitioner.[1] However the trial court attempted to limit the immunity given the petitioner by restricting his testimony "to the identity of the transfer or witness of the sale of guns from Cooper to the defendant and the transaction occurring there and any conversations which may have occurred between Cooper and the defendant at the time of the transfer." The petitioner then took the stand and testified that Cooper had sold the stolen guns to Collins after informing Collins that the guns were not stolen.

Thereafter, on August 14, 1981, the prosecuting attorney informed the petitioner of his intention to prosecute the petitioner on the September 1980 indictment charging him with grand larceny and buying and receiving stolen property. The case was subsequently docketed for trial. The petitioner contends that his compelled testimony in Collins' trial precludes his prosecution on the charges contained in both the January 1980 and September 1980 indictments, and requests a writ of prohibition to prevent the circuit court judge to which his case has been assigned from trying him for any crime arising out of the incidents that precipitated the indictments.

The United States Supreme Court has consistently held that in order for a grant of immunity to be constitutionally adequate, the scope of the immunity must be co-extensive with the scope of the Fifth Amendment privilege against self-incrimination. *Kastigar v. United States,* 406 U.S. 411, 92 S.Ct. 1653, 32 L.Ed.2d 212, *rehearing denied,* 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345 (1972); *Marchetti v. United States,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); *Stevens v. Marks,* 383 U.S. 234, 86 S.Ct. 788, 15 L.Ed.2d 724 (1966); *Murphy v. Waterfront Com. of New York Harbor,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); *Brown v. United States,* 359 U.S. 41, 79 S.Ct. 539, *rehearing denied,* 359 U.S. 976, 79 S.Ct. 873, 3 L.Ed.2d 843 (1959); *Ullman v. United States,* 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511, *rehearing denied,* 351 U.S. 928,

---

[1] These are the standards recognized by this Court in *State v. Haverty,* 165 W.Va. 164, 267 S.E.2d 727 (1980).

76 S.Ct. 777, 100 L.Ed. 1457 (1956); *Glickstein v. United States*, 222 U.S. 139, 32 S.Ct. 71, 56 L.Ed. 128 (1911); *American Lithographic Co. v. Werckmeister*, 221 U.S. 603, 31 S.Ct. 676, 55 L.Ed. 863 (1911); *Counselman v. Hitchcock*, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892).

The Supreme Court first considered the constitutional sufficiency of an immunity statute in *Counselman v. Hitchcock, supra.* The challenged statute provided that "No ... evidence obtained from a party or witness by means of a judicial proceeding ... shall be given in evidence, or in any manner used against him ... in any court of the United States....." 142 U.S. at 560, 12 S.Ct. at 197, 35 L.Ed. at 113. The Court held that the immunity provided was insufficient because the statute afforded protection only against the use of the specific testimony compelled from the witness under the grant of immunity; protection was not provided against the use of evidence derived from the compelled testimony, and thus did not protect the witness to the same extent that a claim of the privilege against self-incrimination would protect him. 142 U.S. at 564, 12 S.Ct. at 198-99, 35 L.Ed. at 1114. In its opinion the court further said that "a statutory enactment, to be valid, must afford absolute immunity against future prosecution for the offense to which the question relates." 142 U.S. at 586, 12 S.Ct. at 206, 35 L.Ed. at 1122.

As a result of this language, *Counselman* was generally regarded to have established a transactional immunity rule. In response to the *Counselman* decision Congress enacted the Compulsory Testimony Act of 1893, which provided that "no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing, concerning which he may testify, or produce evidence ...." Act of February 11, 1893, 27 Stat. 443, 49 U.S.C. § 46. This statute became the model for numerous federal and state immunity statutes. *See, e.g.,* General Appropriation Act of February 25, 1903, 32 Stat. 854, 904; Act of March 2, 1907, 34 Stat. 1246, as amended by the Act of May 9, 1942, 56 Stat. 271, 18 U.S.C. 682; Immunity Act of 1954, 68 Stat. 745, 18 U.S.C. (Supp. II) § 3486; Fla. Stat. Ann. § 914.04 (1971); Ill. Ann. Stat. ch.

43, § 163d (Smith-Hurd 1945); Kan. Stat. Ann. § 62-301 (1923); Mass. Gen. Laws Ann. ch. 233, § 20C (West 1970); N.Y. Criminal Procedure Law § 50.10 (McKinney 1971).[2]

In 1970, upon a re-examination of the constitutional principles involved in a grant of immunity, Congress enacted a new federal witness immunity statute as part of the Organized Crime Control Act of 1970, 18 U.S.C. § 6002. This statute, which provides that "[n]o testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case * * *," was held to be constitutionally adequate in Kastigar v. United States, 406 U.S. 411, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). In holding this grant of use immunity constitutionally adequate the court limited the broad language of Counselman which had previously been interpreted as requiring transactional immunity.

Our immunity statute, W. Va. Code § 57-5-2 (1966), provides:

> In any criminal proceeding no person shall be excused from testifying or from producing documentary or other evidence upon the ground that such testimony or evidence may criminate or tend to criminate him, if the court in which he is examined is of the opinion that the ends of justice may be promoted by compelling such testimony or evidence. And if, but for this section, the person would have been excused from so testifying or from producing such evidence, then if the person is so compelled to testify or produce other evidence and if such testimony or evidence is self-criminating, such self-criminating testimony or evidence shall not be used or receivable in evidence against him in any proceeding against him thereafter taking place other than a prosecution for perjury in the giving of such evidence, and the person so compelled to testify or furnish evidence

---

[2] For an exhaustive list of state and federal immunity statutes, see 8 J. Wigmore, Evidence § 2281 at 495, n.11 (McNaughton Revision 1961).

shall not be prosecuted for the offense in regard to which he is so compelled to testify or furnish evidence, and he shall have complete legal immunity in regard thereto.

This Court discussed the scope of the immunity granted by W. Va. Code § 57-5-2 in the case of *State v. Abdella*, 139 W.Va. 428, 82 S.E.2d 913 (1954). In *Abdella* we stated that the statute "is comprehensive, both in taking away the privilege which a witness has [under the United States and West Virginia Constitutions], and in clothing an involuntary witness with complete immunity in regard to all compelled self-incriminating evidence." 139 W.Va. at 444, 82 S.E.2d at 922. Furthermore, we also explained that the Legislature intended by enactment of the statute to come within the holding of the United States Supreme Court in *Counselman v. Hitchcock, supra.*

Because W. Va. Code § 57-5-2 was drafted in the *Counselman* transactional immunity mold, and explicitly prohibits prosecution of a witness who has been compelled to testify for the offense to which his testimony relates, the holding of the United States Supreme Court in *Kastigar* does not affect the scope of our immunity statute. Transactional immunity remains constitutionally adequate.

Most statutes drafted with *Counselman* transactional immunity in mind parallel the language of the 1893 federal act. However, other jurisdictions with statutes similar in wording to W. Va. Code § 57-5-2 have held that those statutes confer a complete transactional immunity. *See, e.g., Ex parte Montgomery*, 244 Ala. 91, 12 So.2d 314 (1943); *In re Watson*, 293 Mich. 263, 291 N.W. 652 (1940). It is therefore clear, from this Court's prior interpretation of W. Va. Code § 57-5-2 from the interpretation given similarly worded statutes in other jurisdictions, and from the plain language of the statute itself, which provides that "the person so compelled to testify . . . shall not be prosecuted for the offense in regard to which he is so compelled to testify . . . and he shall have complete legal immunity in regard thereto," that the statute confers upon a witness compelled to testify over his claim of

self-incrimination, a complete immunity that precludes subsequent criminal prosecution for any facet of the offense to which his testimony relates. Prosecution of the petitioner for buying, receiving, or aiding in the concealment and transfer of stolen property to a person other than its rightful owner, is therefore precluded by the grant of immunity given by the trial court.

However, since the petitioner's testimony related only to the facts surrounding the transfer of the allegedly stolen guns, the grant of immunity would not preclude his prosecution for burglary or grand larceny. These offenses are separate and distinct from the crime of buying, receiving, or aiding in the concealment or transfer of stolen goods. *See State v. Basham* 159 W.Va. 404, 233 S.E.2d 53 (1976); *State v. McGraw*, 140 W.Va. 547, 85 S.E.2d 849 (1955). The petitioner was not compelled to testify about them, and from the record they appear but marginally related to the immunized offense, if indeed they are related at all. Therefore because the immunity granted the petitioner precludes his prosecution only on the charge of buying, receiving, or aiding in the concealment or transfer of stolen goods, he may be brought to trial on the first count of the September 1980 indictment charging him with grand larceny, and on the burglary charges contained in the January 1980 indictment.

Moreover, while it is clear that our immunity statute precludes prosecution of a witness for a criminal offense in regard to which he has been compelled to testify, prohibition is not a proper proceeding in which to initiate the immunity claim. The extraordinary writ of prohibition speaks purely to jurisdictional matters, *see State ex rel. Williams v. Narick*, 164 W.Va. 632, 264 S.E.2d 851 (1980), and will lie only in a clear case where an inferior judicial tribunal is proceeding without, or in excess of, its jurisdiction, *see, e.g., State v. O'Brien*, 100 W.Va. 163, 130 S.E. 111 (1925), or where a ministerial body attempts to ursurp the jurisdiction of a judicial tribunal. *State ex rel. City of Huntington v. Lombardo*, 149 W.Va. 671, 143 S.E.2d 535 (1965).

A claim of immunity based in W. Va. Code § 57-5-2, however, does not go to the jurisdiction of the circuit court. Rather, a claim of immunity based in W. Va. Code § 57-5-2 is a defense formerly raised by a special plea in bar, *see State v. Cox,* 162 W.Va. 915, 253 S.E.2d 517 (1979); *State v. Sine,* 91 W.Va. 608, 114 S.E. 150 (1922), and now properly raised by motion to dismiss. *See* W. Va. R. Crim. P. 12(a). The merit of the petitioner's claim of immunity therefore must initially be determined by the trial court upon consideration of the petitioner's motion to dismiss. The trial court's ruling on such motion will, of course, be guided by the considerations discussed herein.

For the foregoing reasons the writ of prohibition is denied.

*Writ denied.*