382 S.E.2d 547

**STATE of West Virginia**

v.

**Joseph HANSON.**

**No. 17691.**

Supreme Court of Appeals of West Virginia.

June 16, 1989.

Steven M. Askin, Jodie M. Boylen, Askin, Pill, Scales & Burke, Martinsburg, for Joseph Hanson.

Brenda Craig Ellis, Asst. Atty. Gen., Charleston, for State.

MILLER, Justice:

This is an appeal from a final order of the Circuit Court of Pendleton County, entered June 26, 1986, which sentenced the defendant below, Joseph Hanson, to imprisonment in the penitentiary following his conviction of the crimes of first degree arson, arson with intent to defraud, burglary, grand larceny, breaking and entering, perjury, petit larceny, and conspiracy. The defendant contends that the trial court erred in failing to suppress incriminating statements and testimony and in allowing him to be tried on all charges at the same time. The defendant also contends that there was insufficient evidence to support the arson and perjury convictions. We find error, and we reverse the judgment of the trial court.

At approximately 1:15 a.m. on the morning of February 17, 1985, a fire destroyed the defendant's mobile home in Sugar Grove, Pendleton County. The fire marshal's investigation revealed evidence of arson, and Corporal A. T. Humphreys of the Department of Public Safety was asked to investigate. After the police spoke to the defendant's neighbors and relatives, suspicion fell on the defendant, Steven Eckard, and Wesley Eye. All three suspects gave statements to the police, but admitted no involvement in the crime.

On the afternoon of March 14, 1985, the residence of Calvin Borror was burglarized. Mr. and Mrs. Borror reported that approximately $23,000 in currency and coins had been stolen from a safe in the residence. After some investigation, suspicion became focused on Kenneth Judy and another individual who knew that the Borrors kept large sums of cash in their house. The police notified area banks to watch for deposits of musty-smelling paper money, particularly one dollar bills.

On March 16, 1985, Trooper Richard D. Gillespie of the Department of Public Safety was notified that the defendant had made a deposit of foul-smelling money at a Pendleton County bank. Trooper Gillespie subsequently learned that the defendant had been living with Wesley Eye since his trailer had been destroyed and drove the same type of vehicle that had been seen in the area of the Borror residence the day before the break-in. The defendant continued to circulate musty-smelling money at local establishments. On March 21, 1985, Trooper Gillespie received an anonymous phone call informing him that the defendant, Wesley Eye, Steven Eckard, and one other individual had been bragging about committing the Borror burglary and setting fire to the defendant's trailer. The defendant, Eye, and Eckard had all been observed with large amounts of cash following the burglary, and the defendant and Eckard had bought new cars the day afterwards.

At approximately 3:00 p.m. on March 23, 1985, Trooper Gillespie went to the bar owned by the defendant and his wife and asked the defendant and Steven Eckard to come to the Franklin detachment for questioning. Eckard was advised of his *Miranda*[1] rights before leaving the bar and subsequently gave a statement in which he denied involvement in the burglary. The defendant was advised of his rights at the detachment and, at 4:42 p.m., gave Trooper Gillespie a statement in which he admitted being with Judy, Eye, and Eckard on March 13 and March 14, but denied any involvement in the burglary of the Borror residence.

Trooper Gillespie subsequently consulted with the prosecuting attorney, who authorized immunity from prosecution if the defendant told the complete truth and was available to testify against other participants in criminal activities. Upon being advised of this proposal, the defendant asked to speak to his wife. Trooper Gillespie drove the defendant to the bar for that purpose and then returned him to the

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Franklin detachment, where the defendant spoke with his attorney via telephone. The prosecuting attorney then spoke to the defendant's attorney, and an agreement was reached for the defendant to give a statement. In this statement, taken at 9:35 p.m., the defendant admitted that he, Eye, Eckard, and Judy had been involved in the burglary of the Borror residence. The defendant also confessed that he had conspired with Eye and Eckard to burn his home in order to obtain the insurance money and admitted complicity with Judy and Eckard in the recent breaking and entering of a Pendleton County business establishment.

Early in the morning of March 24, 1985, warrants were issued for the arrest of Eye, Judy, and Eckard on burglary charges and for the arrest of Eye and Eckard on arson charges. Warrants were also issued to search the Eye and Judy residences. All three men were arrested. The defendant was released from custody at approximately noon, after giving a third statement indicating that the first statement he gave to Trooper Gillespie was not accurate and that the second one was truthful.

The defendant remained free until April 9, 1985, when he attended the preliminary hearing for Wesley Eye. When the defendant refused to testify without an attorney present, the prosecuting attorney, who viewed his action as a lack of cooperation, ordered him arrested on arson and burglary charges. During his subsequent incarceration, the defendant cooperated with the authorities by making notes of his criminal activities.

On May 21 and 22, 1985, the defendant gave sworn depositions consistent with the incriminating statement he gave Trooper Gillespie on March 23, 1985, and implicating himself, Eye, Eckard, and Judy in the arson and the burglary. The defendant's attorney was present, but the record does not reflect any advice or participation of counsel, other than his advice to the defendant to cooperate fully with the authorities. After giving these depositions, the defendant was released from jail on bond.

On September 24, 1985, the defendant testified at the trial of Kenneth Judy. His testimony, however, varied from his previous statements in that it tended to exculpate Judy and Eye. The defendant was subsequently arrested for perjury.

On December 11, 1985, an indictment was returned charging the defendant with first degree arson, arson with intent to defraud, burglary, grand larceny, breaking and entering, petit larceny, seven counts of conspiracy to commit the above crimes, and perjury. Prior to trial, the defendant moved to suppress all of the incriminating statements. After an *in camera* hearing, conducted on April 16, 1986, the defendant's motion was denied.

The case proceeded to trial on June 5, 1986. The jury found the defendant guilty on all counts except conspiracy to commit petit larceny. By order dated June 26, 1986, the circuit court denied the defendant's motion to set aside the verdict and sentenced the defendant to concurrent terms of imprisonment of not less than two nor more than ten years upon the first degree arson conviction, and not less than one nor more than fifteen years upon the burglary conviction. The court ordered the sentences for each of the remaining convictions, which carried penalties ranging from six months to not less than one nor more than ten years, to be served concurrently, but consecutive to the sentences for the first degree arson and burglary convictions. The circuit court recommended that the defendant serve a minimum of five years before being considered for parole.

I.

The defendant's principal contention on appeal is that the trial court erred in not excluding the various incriminating statements he made. At trial, the statements the defendant gave to the police on March 23, 1985, a statement he gave in May, 1985, and his testimony at the trial of Kenneth Judy were read into the record. In addition, Trooper Gillespie testified to the substance of the incriminating statements. The defendant contends that these state-

ments were obtained by promises of immunity and were, therefore, inadmissible.

■ As an initial matter, the State asserts that the defendant did not seek exclusion of the statements on this ground at the suppression hearing below and must, therefore, be deemed to have waived any error. We have long held, however, that "this Court will take cognizance of plain error involving a fundamental right of an accused which is protected by the Constitution." Syllabus Point 4, in part, *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975). More recently, in Syllabus Point 4 of *State v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988), we recognized that the plain error doctrine embodied in Rule 30 and Rule 52(b) of the West Virginia Rules of Criminal Procedure

> "enables this Court to take notice of error, including instructional error occurring during the proceedings, even though such error was not brought to the attention of the trial court. However, the doctrine is to be used sparingly and only in those circumstances where substantial rights are affected, or the truth-finding process is substantially impaired, or a miscarriage of justice would otherwise result."

*See State v. Grubbs*, 178 W.Va. 811, 364 S.E.2d 824 (1987); *State v. Hatala*, 176 W.Va. 435, 345 S.E.2d 310 (1986). We believe this is an appropriate case for application of the doctrine, not only because the Fifth Amendment protection against self-incrimination, a substantial constitutional right, is affected, but also because the admission of these statements had a substantial impact on the jury's truth-finding function.

■ The general rule regarding the admissibility of confessions was stated in Syllabus Point 5 of *State v. Starr, supra:*

> "The State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of part or all of an offense were voluntary before such may be admitted into the evidence of a criminal case."

We also stated in Syllabus Point 7 of *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982):

> " 'When the representations of one in authority are calculated to foment hope or despair in the mind of the accused to any material degree, and a confession ensues, it cannot be deemed voluntary.' Syllabus, *State v. Parsons*, 108 W.Va. 705, 152 S.E. 745 (1930)."

■ In *Persinger*, we pointed out that this test is much like the one "reached in *Bram v. United States*, 168 U.S. 532, 542–43, 42 L.Ed. 568, 573, 18 S.Ct. 183, 187 (1897), where the Supreme Court held that a confession 'must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.' " 169 W.Va. at 140, 286 S.E.2d at 272. *Bram* was cited in *Shotwell Mfg. Co. v. United States*, 371 U.S. 341, 348, 83 S.Ct. 448, 453–54, 9 L.Ed.2d 357, 364 (1963), where the Supreme Court stated:

> "Petitioners' position is not like that of a person, accused or suspected of crime, to whom a policeman, a prosecutor, or an investigating agency has made a promise of immunity or leniency in return for a statement. In those circumstances, an inculpatory statement would be the product of inducement, and, thus, not an act of free will."

Thus, a promise of immunity from prosecution is the type of inducement which will render a subsequent confession based on such promise involuntary and therefore inadmissible in evidence against the defendant at trial. *See Shotwell Mfg. Co. v. United States, supra; United States v. Weiss*, 599 F.2d 730 (5th Cir.1979); *Henthorne v. State*, 409 So.2d 1081 (Fla.App. 1982); *Walker v. State*, 249 Ind. 551, 233 N.E.2d 483 (1968); *Commonwealth v. Peters*, 473 Pa. 72, 373 A.2d 1055 (1977). *See generally* 29 Am.Jur. 2d *Evidence* § 563 (1967); 23 C.J.S. *Criminal Law* § 825c (1961); 4 *Wharton's Criminal Evidence* § 638 (14th ed. 1987).

■ We note that although it is not disputed that the prosecutor offered the defendant immunity from prosecution if he

would testify against his codefendants, there is no record before this Court of a grant of immunity by the lower court pursuant to W.Va.Code, 57–5–2 (1931).[2] The general rule, as stated in Syllabus Point 2, in part, of *State v. Pennington*, 179 W.Va. 139, 365 S.E.2d 803 (1987), is:

> " '[I]n the absence of some express constitutional or statutory provision, a prosecutor has no inherent authority to grant immunity against prosecution.' Syl. pt. 16 [in part], *Myers v. Frazier*, 173 W.Va. 658, 319 S.E.2d 782 (1984)."

We addressed the admissibility of evidence obtained under a prosecutor's promise of immunity in such circumstances in note 37 of *Myers*, 173 W.Va. at 678, 319 S.E.2d at 803:

> "Some courts have recognized that where a prosecutor has promised immunity against prosecution without having the authority to do so, subsequent prosecution is not foreclosed, but the evidence induced or secured from the suspect cannot be used against him. *E.g., People v. Manning*, 672 P.2d 499, 512–13 (Colo. 1983) (en banc); [*State v. Ward*, 571 P.2d 1343, 1347 (Utah 1977), *cert. denied*, 435 U.S. 1005, 98 S.Ct. 1874, 56 L.Ed.2d 386 (1978).]
>
> "This approach is consistent with our holdings that any inculpatory evidence

obtained by way of promises of leniency are not admissible against a defendant. *E.g., State v. Cooper*, 172 W.Va. 266, 304 S.E.2d 851, 853 (1983); *State v. Goff*, W.Va., [169 W.Va. 778] 289 S.E.2d 473, 476 (1982); *State v. Persinger*, W.Va., [169 W.Va. 121] 286 S.E.2d 261, 272–73 (1982); *State v. Parsons*, 108 W.Va. 705, 706, 152 S.E. 745, 746 (1930).

> "A few courts have applied a concept of equitable immunity to this situation and enforced such immunity agreements, despite the fact that the defendant's rights could be protected by excluding any induced testimony or derivative evidence. *See Rowe v. Griffin*, 676 F.2d 524, 526 (11th Cir.1982); *People v. Brunner*, 32 Cal.App.3d 908, 108 Cal.Rptr. 501 (1973)."

We reiterated these principles in *State v. Pennington, supra.*[3]

The State argues, however, that the defendant in this case is more akin to an accused who makes inculpatory statements after entering into a plea agreement with a condition that he cooperate with the prosecution. If the accused later fails to comply with the plea agreement, some courts have held that his statements may be used against him. *E.g., United States v. Stirling*, 571 F.2d 708 (2d Cir.), *cert. denied*,

---

**2.** W.Va.Code, 57–5–2, provides:

"In any criminal proceeding no person shall be excused from testifying or from producing documentary or other evidence upon the ground that such testimony or evidence may criminate or tend to criminate him, if the court in which he is examined is of the opinion that the ends of justice may be promoted by compelling such testimony or evidence. And if, but for this section, the person would have been excused from so testifying or from producing such evidence, then if the person is so compelled to testify or produce other evidence and if such testimony or evidence is self-criminating, such self-criminating testimony or evidence shall not be used or receivable in evidence against him in any proceeding against him thereafter taking place other than a prosecution for perjury in the giving of such evidence, and the person compelled to testify or furnish evidence shall not be prosecuted for the offense in regard to which he is so compelled to testify or furnish evidence, and he shall have complete legal immunity in regard thereto."

We note that in a recent *per curiam* opinion, we indicated that a grant of immunity pursuant to this provision was applicable only to witnesses called to testify on behalf of the State. *State v. Deskins*, 181 W.Va. 112, 380 S.E.2d 676 (1989). In *State v. Haverty*, 165 W.Va. 164, 267 S.E.2d 727 (1980), however, we expressly recognized that defense witnesses could be granted immunity from prosecution under W.Va.Code, 57–5–2, in certain circumstances. *See State v. King*, 173 W.Va. 164, 313 S.E.2d 440 (1984); *State ex rel. Brown v. MacQueen*, 169 W.Va. 56, 285 S.E.2d 486 (1981).

**3.** In note 6 of *Pennington*, 179 W.Va. at 145, 365 S.E.2d at 809, we further stated:

"We note that the concept of 'equitable immunity' is not well-defined. *Rowe v. Griffin*, 676 F.2d 524, 526 n. 3 (11th Cir.1982); *United States v. Weiss*, 599 F.2d 730, 735 n. 9 (5th Cir.1979). Our research reveals the phrase is used in several cases, but without precise definition. *See, e.g., Rowe, supra; Weiss, supra; United States v. Donahey*, 529 F.2d 831, 832 (5th Cir.), *cert. denied*, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976)."

439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 116 (1978); *People v. Saunders,* 135 Ill.App.3d 594, 90 Ill.Dec. 378, 482 N.E.2d 85 (1985). We do not believe this principle is applicable here.

First, the cases relied upon by the State were not decided under rules similar to Rule 11(e)(6) of the West Virginia Rules of Criminal Procedure.[4] Federal cases decided before 1980, for example, are of little precedential value simply because at the time, Rule 11(e)(6) of the Federal Rules of Criminal Procedure[5] did not address the situation where the plea agreement was not ultimately agreed to by the parties or, if agreed to, was later broken by the defendant's refusal to carry out the bargain. Other jurisdictions rely on similar provisions to reach the result advanced by the State.[6]

 The current criminal rules provide no support for the State's position. Both the federal and state versions of Rule 11(e)(6)(D) now specifically provide that statements made to a state's attorney[7] during plea negotiations are not admissible even though the agreement is not consummated or the guilty plea is later withdrawn. The recognized purpose of the rule is to encourage parties who are negotiating to be frank and open with one another, a result which would not be possible if plea offers or other fact statements could later be admitted into evidence. *E.g., United States v. Grant,* 622 F.2d 308 (8th Cir. 1980); *United States v. Robertson,* 582 F.2d 1356 (5th Cir.1978); *United States v. Verdoorn,* 528 F.2d 103 (8th Cir.1976).

Moreover, Rule 11(e)(6)(D) expressly applies to "statements made in the course of plea discussions." Here, there were no plea discussions. Indeed, the agreement in this case is not the typical plea agreement, covered by Rule 11, where the defendant pleads guilty to one or more offenses in return for concessions by the prosecution. Rather, the prosecutor here agreed not to prosecute the defendant at all in return for

---

**4.** Rule 11(e)(6), W.Va.R.Crim.P., states:

"Inadmissibility of Pleas, Plea Discussions, and Related Statements.—Except as otherwise provided in this paragraph, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

"(A) A plea of guilty which was later withdrawn;

"(B) A plea of nolo contendere;

"(C) Any statement made in the course of any proceedings under this rule regarding either of the foregoing pleas; or

"(D) *Any statement made in the course of plea discussions with an attorney for the state which does not result in a plea of guilty [or which resulted in a plea of guilty] later withdrawn. However, such a* statement is admissible:

"(i) In any proceeding wherein another statement made in the course of the same plea discussions has been introduced and the statement ought in fairness to be considered contemporaneously with it; or

"(ii) In a criminal proceeding for false swearing if the statement was made by the defendant under oath, on the record, in the presence of counsel." (Emphasis added).

The bracketed portion of the quotation represents a phrase that had been inadvertently omitted from our rule. Without this phrase, which is included in Rule 11(e)(6)(D) of the Federal Rules of Criminal Procedure, after which our rule is patterned, the rule does not make sense. Furthermore, the language of Rule 11(e), including the bracketed phrase, is duplicated in Rule 410, W.Va.R.Evid.

**5.** Prior to 1980, Rule 11(e)(6), Fed.R.Crim.P., stated:

"Except as otherwise provided in this paragraph, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer. However, evidence of a statement made in connection with, and relevant to, a plea of guilty, later withdrawn, a plea of nolo contendere, or an offer to plead guilty or nolo contendere to the crime charged or any other crime, is admissible in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel."

**6.** The court in *People v. Saunders, supra,* for example, decided the issue under Rule 402(f) of the Illinois Rules of Supreme Court, which was similar to Rule 11(e)(6), Fed.R.Crim.P., prior to 1980.

**7.** In both *Stirling* and *Saunders* the defendant's testimony was given to a grand jury, rather than to the state's attorney, and was, therefore, outside the scope of Rule 11(e)(6)(D).

his cooperation, which, as is usually the case, involved his testimony against other persons. Courts generally term this type of an arrangement a "cooperation agreement" and will bring to bear, to some extent, the same contract law principles applicable to a plea arrangement. *E.g., United States v. Carrillo,* 709 F.2d 35 (9th Cir. 1983); *State v. Hanson,* 249 Ga. 739, 295 S.E.2d 297 (1982).

Courts have concluded, however, that statements or other inculpatory evidence obtained from the defendant under such cooperation agreements cannot be used against him in the event he does not fulfill the terms of the agreement. *See United States v. Kurzer,* 534 F.2d 511 (2d Cir. 1976); *United States v. Weiss, supra;* *People v. Manning, supra; Abner v. State,* 479 N.E.2d 1254 (Ind.1985); *People v. Gallego,* 143 Mich.App. 639, 372 N.W.2d 640 (1985), *aff'd,* 430 Mich. 443, 424 N.W.2d 470 (1988); *State v. Ward, supra.* As noted earlier, this result flows from constitutional considerations that preclude confessions induced by promises of leniency. *Myers v. Frazier, supra.* Clearly, Rule 11(e)(6)(D) was not designed to address this constitutional issue.

■ Nor can we say that the defendant's statements were voluntary merely because he had the advice of counsel. We are aware of the Supreme Court's per curiam opinion in *Hutto v. Ross,* 429 U.S. 28, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976), where a confession given to a prosecuting attorney after the defendant had entered into a plea agreement was found admissible. However, the confession in *Hutto* was surrounded by several safeguards. The defendant's attorney was present during the confession and had informed the defendant of his Fifth Amendment right against self-incrimination. Additionally, the attorney had assured the defendant that the terms of the plea agreement were available to him even if he refused to make a statement. All of these warnings were made prior to the defendant's confession. On

this basis, the Supreme Court concluded that the confession was voluntary and sanctioned its use against the defendant after he obtained new counsel and withdrew from the plea agreement.

In *Gunsby v. Wainwright,* 596 F.2d 654 (5th Cir.), *cert. denied,* 444 U.S. 946, 100 S.Ct. 307, 62 L.Ed.2d 315 (1979), however, the court held that a deposition given after the defendant had entered into a plea agreement could not be used against him when the plea agreement was negated afterwards. The defendant's attorney, who had been present during the deposition, stated that had he known the plea agreement would be vacated, he would not have permitted the defendant to give the deposition. The court found *Hutto v. Ross, supra,* not to be applicable and the mere fact that the defendant was represented by an attorney not to be dispositive. *See also Henthorne v. State, supra.*

It is true that after the initial offer of immunity, the defendant here was able to talk to his attorney on the telephone. The record also discloses that an attorney was present at the depositions subsequently given by the defendant.[8] However, the record does not reflect any attempt to afford the defendant the extensive safeguards present in *Hutto v. Ross.* Furthermore, this was not a plea arrangement where the plea would stand regardless of the defendant's confession. On the contrary, the main purpose of the immunity arrangement was to obtain statements from the defendant implicating himself and others in the Borror burglary and the arson.

Again, it needs to be stressed that this case involves a promise of complete immunity from prosecution so long as the defendant cooperated by telling the truth about his criminal activities. There are serious problems with such an arrangement where, as here, the prosecutor has no authority to extend such immunity. As we indicated in *Myers v. Frazier, supra,* such an immunity

---

**8.** The defendant does not raise, and, therefore, we do not address, whether his Sixth Amendment right to counsel was violated by taking statements in the absence of counsel or his consent. *See Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). *Cf. Satterwhite v. Texas,* 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988).

agreement is void and cannot be enforced against the State. Consequently, a prosecutor would have everything to gain and nothing to lose if he could grant immunity, obtain a confession from the defendant, and then utilize these confessions at the defendant's criminal trial.

■ To claim that the defendant is not entitled to relief because he did not faithfully fulfill his obligation to cooperate misperceives the nature of the issue. The defendant in such a situation is not immune from prosecution, but is entitled not to have statements made under the prosecutor's grant of immunity used against him. As the court stated in *United States v. Kurzer*, 534 F.2d at 518, where a valid immunity agreement had been breached:

"[T]he ordinary remedy for the Government when an immunized witness lies or fails to cooperate fully is a prosecution for perjury or for contempt, rather than abrogation of the immunity agreement and use of the information truthfully given by the immunized witness to prosecute him for other offenses." (Citations omitted).

See *In re Yoho*, 171 W.Va. 625, 301 S.E.2d 581 (1983).

In *New Jersey v. Portash*, 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979), the United States Supreme Court considered the admissibility of statements made by a defendant pursuant to an immunity grant. The defendant, after talking to his attorney, had agreed to testify before a grand jury. A New Jersey statute precluded the use of such testimony against the defendant in a subsequent criminal proceeding. At trial, the State was allowed to use his grand jury testimony to impeach his trial testimony. The Supreme Court held that

"[t]estimony given in response to a grant of legislative immunity is the essence of coerced testimony. In such cases there is no question whether physical or psychological pressures overrode the defendant's will; the witness is told to talk or face the government's coercive sanctions, notably, a conviction for contempt." 440

U.S. at 459, 99 S.Ct. at 1297, 59 L.Ed.2d at 510.

Thus, if the defendant here had been given a lawful grant of immunity, his testimony could not have been used against him. To permit a different result where there is no lawful grant would be singularly unfair.

■ It is clear from the foregoing law that the State is entitled to prosecute a defendant upon his failure to cooperate under the terms of an immunity agreement. It is not entitled to use statements obtained as a result of such agreement against him in prosecuting him for crimes originally covered by the immunity grant. Accordingly, we find plain error in the admission of the defendant's statements at trial, and we reverse the convictions on this ground.

## II.

■ The defendant also contends that his perjury conviction should be set aside because the statements underlying the charge, namely his testimony at Kenneth Judy's trial and sworn depositions given to the authorities in May, 1985, were made at a time when he was under the prosecutor's immunity grant.

Immunity statutes like W.Va.Code, 57–5–2, often permit the testimony or statements of a person who is given immunity to be used against him in a prosecution for perjury if he testifies falsely.[9] See *People v. Tomasello*, 21 N.Y.2d 143, 287 N.Y.S.2d 1, 234 N.E.2d 190 (1967). See generally 70 C.J.S. *Perjury* § 32 (1987). Such an exception to the general prohibition against the use of immunized testimony is constitutionally permissible. See *United States v. Apfelbaum*, 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980). Where, however, an immunity statute is silent as to the State's right to prosecute for perjury, courts have taken the view that the immunized statements or testimony may not be used for that purpose. See *State v. Fowler*, 466 So.2d 210 (Fla.1985).

We are not favorably disposed toward grants of immunity by prosecutors. There is no legal authority for such a practice,

---

**9.** For the applicable language of W.Va.Code, 57–5–2, see note 2, *supra*.

and we have had to fashion rules to protect the defendant's constitutional rights when unauthorized grants are made. Moreover, this unauthorized practice can lead to abuses not only of the defendant's rights. The public at large can suffer from precipitous prosecutorial grants of immunity which allow defendants to escape prosecution.

The proper approach to immunity is through application to the court which, under W.Va.Code, 57–5–2, must be satisfied "that the ends of justice may be promoted" by extending immunity. In order to further discourage unauthorized grants of immunity, we hold that where a grant of immunity by the prosecuting attorney does not comply with W.Va.Code, 57–5–2, the State is not entitled to prosecute the defendant for perjury or false swearing upon testimony arising from the immunity grant.

### III.

■ The defendant also contends that the State failed to prove the arson charges against him. We recently addressed this point in Syllabus Point 5 of *State v. Mullins*, 181 W.Va. 415, 383 S.E.2d 47 (1989):

> "To sustain a conviction of arson, when the evidence offered at trial is circumstantial, the evidence must show that the fire was of an incendiary origin and the defendant must be connected with the actual commission of the crime."

*See State v. Yates*, 169 W.Va. 453, 288 S.E.2d 522 (1982); *State v. Jones*, 161 W.Va. 55, 239 S.E.2d 763 (1977), *overruled on other grounds*, *State v. Petry*, 166 W.Va. 153, 273 S.E.2d 346 (1980). The defendant here argues that the State failed to prove that the fire was of an incendiary origin and that his retrial on those charges is therefore barred by double jeopardy principles. We disagree.

At trial, Trooper Gillespie testified that Corporal Humphreys and the fire marshal had both stated that an accelerant had been used to start the fire at the defendant's trailer. In addition, Steven Eckard testified that the defendant had solicited the arson and that Wesley Eye had possession of kindling and kerosene at the scene shortly before the fire broke out.

■ It may well be that Trooper Gillespie's testimony as to the suspicious origin of the fire, based on his conversations with Corporal Humphreys and his reading of the fire marshal's investigatory report, was hearsay and inadmissible. However, defense counsel not only failed to object to this testimony, but actually elicited it in the first instance on cross-examination of Trooper Gillespie. In Syllabus Point 2 of *State v. McWilliams*, 177 W.Va. 369, 352 S.E.2d 120 (1986), we stated:

> " 'An appellant or plaintiff in error will not be permitted to complain of error in the admission of evidence which he offered or elicited, and this is true even of a defendant in a criminal case.' Syl. pt. 2, *State v. Bowman*, 155 W.Va. 562, 184 S.E.2d 314 (1971)."

Accordingly, the defendant cannot now complain of the introduction of this testimony at trial.

Moreover, Steven Eckard's trial testimony supports the conclusion that the fire was incendiary in nature. In these circumstances, we cannot conclude that the prosecution's proof of *corpus delicti* was so manifestly insufficient as to bar retrial of the defendant on the arson charges.

### IV.

Although resolution of the preceding issues renders it unnecessary for us to address the defendant's other assignments of error, we note that the defendant was tried on fourteen charges [10] at the same trial. Rule 14(a) of the West Virginia Rules of Criminal Procedure provides, in pertinent part: "If it appears that a defendant ... is prejudiced by a joinder of offenses ... for trial together, the court may order an election or separate trials of the counts...." In the appeal of one of the defendant's alleged coconspirators, we recognized that

---

**10.** The State concedes that the there were, in fact, only three conspiracies. *See State v. Judy,*

179 W.Va. 734, 372 S.E.2d 796 (1988).

a joint trial of the arson and burglary charges was prejudicial error requiring reversal. *State v. Eye*, 177 W.Va. 677, 355 S.E.2d 921 (1987). On remand, the circuit court should carefully scrutinize the charges against the defendant in this light. *See State v. Hatfield*, 181 W.Va. 106, 380 S.E.2d 670 (1988); *State v. Clements*, 175 W.Va. 463, 334 S.E.2d 600, *cert. denied*, 474 U.S. 857, 106 S.Ct. 165, 88 L.Ed.2d 137 (1985); *State v. Mitter*, 168 W.Va. 531, 285 S.E.2d 376 (1981).

## V.

For the reasons stated above, we reverse the judgment of the Circuit Court of Pendleton County and remand the case for such further proceedings as the State deems necessary.

Reversed and remanded.

McGRAW, J., participated and concurred in this decision, but departed from the Court prior to the preparation of the opinion. WORKMAN, J., did not participate in the consideration or decision of this case.