# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **G.M., and L.V.-M.**

**No. 19-0696** (Mercer County 17-JA-199-WS and 17-JA-200-WS)

**FILED**
**April 28, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother C.M., by counsel Gerald L. Linkous, appeals the Circuit Court of Mercer County's July 12, 2019, order terminating her parental, custodial, and guardianship rights to G.M. and L.V.-M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Catherine Bond Wallace, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in considering a psychological evaluation not admitted into evidence and in terminating her parental, custodial, and guardianship rights rather than imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Following the filing of a child abuse and neglect petition alleging that the children were exposed to domestic violence, inappropriate supervision, and adult situations, petitioner stipulated to adjudication, and the circuit court granted her a post-adjudicatory improvement period.[2] During

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner also participated in a preadjudicatory improvement period prior to stipulating to adjudication. However, the record that petitioner provided on appeal is extremely limited and does not contain any of the circuit court's orders related to her preadjudicatory improvement period.

that improvement period, the DHHR required petitioner to participate in counseling and in-home services, and to maintain independent housing and stable employment throughout the proceedings.

The circuit court held a final dispositional hearing in June of 2019. The DHHR moved to terminate petitioner's parental rights, to which petitioner objected and moved for a dispositional improvement period. The DHHR presented testimony from petitioner's case worker that she failed to complete the terms of the previously granted improvement periods. The case worker explained that petitioner was originally granted a preadjudicatory improvement period with terms that were similar to her post-adjudicatory improvement period. The case worker testified that, during both improvement periods, petitioner reported that she was participating in counseling. However, the case worker learned that petitioner had not been participating in counseling. Further, the case worker testified that petitioner maintained employment for a time, but was incarcerated multiple times throughout the proceedings due to unrelated criminal charges in Virginia. As a result, the worker was unsure whether petitioner continued to be employed. Similarly, the case worker indicated that petitioner continued to be homeless and was living with the children's grandparents, with whom the children were placed. The case worker raised additional concerns that petitioner was facilitating contact between the children and the father of one of the children whose rights had been previously terminated. The worker opined that this evidenced petitioner's continued inability to exercise appropriate parental judgment, which had been an issue throughout the proceedings. On cross-examination, petitioner's counsel referred to a psychological evaluation that recommended that petitioner participate in counseling and the DHHR monitor her relationships. The report contradicted the DHHR's recommendation for in-home services.

The children's grandmother testified that petitioner assisted in caring for the children while living in the home and that the children liked spending time with her. According to the grandmother, petitioner was unable to maintain a home at that time due to the "on-going situation" of her instability and work history. The grandmother further testified that the children reported to have seen their father on some occasions while in petitioner's care. Petitioner testified that she was working full-time and located a residence she could afford to rent. Petitioner also testified that she had participated in counseling with a new counselor for two months.

Ultimately, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. The court noted that proceedings had been ongoing for eighteen months, but petitioner exhibited no substantial change during that time. The circuit court considered the psychological evaluation's conclusion that petitioner had the ability to parent. However, the court found that, based on petitioner's failure to improve, she did not exhibit an interest in parenting. Further, the circuit court found that termination was in the children's best interests and necessary to establish permanency for the children. Accordingly, the circuit court terminated petitioner's parental, custodial, and guardianship rights by its July 12, 2019, order.[3]

---

[3]The father's parental rights were also terminated below. According to the parties, the permanency plan for the children is adoption in their current relative foster placement.

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in considering a psychological evaluation that was not admitted as evidence prior to disposition. Petitioner asserts that this Court has previously reversed circuit courts' final orders when the findings of fact are based upon information not offered into evidence. *See John D.K. v. Polly A.S.*, 190 W. Va. 254, 438 S.E.2d 46 (1993) (reversing a circuit court's finding that a mother was unfit to exercise permanent custody of her child due to its consideration of evidence not in the record and a preexisting negative attitude toward the mother). However, it is clear on appeal that petitioner's actions constituted invited error and she is entitled to no relief in this regard.

This Court has held that "[a] judgment will not be reversed for any error in the record introduced by or invited by the party seeking reversal." Syl. Pt. 4, in part, *State v. Mann*, 205 W. Va. 303, 306, 518 S.E.2d 60, 63 (1999)(citations omitted). Further,

> "[i]nvited error" is a cardinal rule of appellate review applied to a wide range of conduct. It is a branch of the doctrine of waiver which prevents a party from inducing an inappropriate or erroneous response and then later seeking to profit from that error. The idea of invited error is not to make the evidence admissible but to protect principles underlying notions of judicial economy and integrity by allocating appropriate responsibility for the inducement of error. Having induced an error, a party in a normal case may not at a later stage of the trial use the error to set aside its immediate and adverse consequences.

*State v. Crabtree*, 198 W. Va. 620, 627, 482 S.E.2d 605, 612 (1996). *See also State v. Hanson*, 181 W. Va. 353, 363, 382 S.E.2d 547, 558 (1989) (holding that inadmissible evidence "elicited . . . in the first instance on cross examination" by the complaining party constituted invited error). In this case, petitioner relied upon the information that she now complains was not introduced into evidence at the final dispositional hearing. During cross-examination of the DHHR case worker, petitioner heavily referenced the psychological evaluation, even asking that witness to read

portions of the evaluation into the record.[4] Clearly, petitioner expected to benefit from the information and intentionally elicited this evidence. Pursuant to the invited error doctrine, she cannot now complain that such evidence was improperly considered by the circuit court. Moreover, this case is distinguishable from *John D.K.* The family court in *John D.K.* relied on its personal knowledge of the parties involved to form a psychological or medical basis for the mother's unfitness. *Id.* at 260, 438 S.E.2d 51. Here, however, petitioner introduced the information that the circuit court considered in disposition. Therefore, we find this argument unpersuasive on appeal.

Petitioner further argues that the circuit court erred in terminating her parental, custodial, and guardianship rights rather than imposing a less-restrictive dispositional alternative, such as termination of only her custodial rights. West Virginia Code § 49-4-604(b)(6) provides that a circuit court may terminate a parent's parental, custodial, and guardianship rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. A circuit court may find that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected" when "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child." W. Va. Code § 49-4-604(c)(3). Notably, petitioner does not challenge the circuit court's finding that there was no reasonable likelihood that the conditions of neglect or abuse could be corrected in the near future. Rather, petitioner asserts that the maternal grandparents were already providing the children with a stable, permanent home, and, therefore, termination of her parental rights was not necessary for their welfare.

We find petitioner's argument to be short-sighted in regard to the children's best interests. Petitioner continued to exhibit the inability to appropriately parent the children after eighteen months of services. During petitioner's improvement period, she exhibited instability that included loss of employment and housing due to criminal activity and incarceration. Severing only petitioner's custodial rights would permit petitioner to indiscriminately phase in and out of the children's lives and continually expose them to these conditions of abuse and neglect that she had failed to remedy. This Court has expressed that "[e]nsuring finality for these children is vital to safeguarding their best interests so that they may have permanency and not be continually shuttled from placement to placement." *In re Cesar L.*, 221 W. Va. 249, 258, 654 S.E.2d 373, 382 (2007). *See also* Syl. Pt. 4, in part, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2104) ("The controlling standard that governs any dispositional decision remains the best interests of the child[ren]."). The circuit court's termination of petitioner's parental rights sheltered the children from her ongoing issues and promoted their best interests by ensuring permanency and finality. Finally, we have held that

---

[4]Petitioner asked nine questions directly related to the psychological evaluation at issue, which included reading a paragraph of the evaluator's mental health diagnosis of petitioner into the record.

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Thus, we find no abuse of discretion or clear error in the circuit court's order terminating petitioner's parental, custodial, and guardianship rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 12, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:   April 28, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison